IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Jessica Beam Pickett, | ) | Civil Action No.: 4:11-cv-02445-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Sharon Forest, in her official | ) | |
| capacity as Executive Director of the | ) | |
| Housing Authority of the City of | ) | |
| Myrtle Beach; and the Housing | ) | |
| Authority of the City of Myrtle | ) | |
| Beach, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Jessica Beam Pickett filed this action against Defendants Sharon Forest and the Housing Authority of the City of Myrtle Beach ("MBHA") pursuant to 42 U.S.C. § 1983. She alleges violations of her rights under the Fourteenth Amendment's Due Process Clause and section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f ("Section 8"), and its corresponding regulations. Now before the Court are the parties' cross-motions for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties appeared before the Court for a December 19, 2012 hearing, and the cross-motions were taken under advisement. After reviewing the parties' cross-motions and briefs, and considering the parties' arguments and supporting evidence, the Court denies Plaintiff's motion and grants Defendants' motion.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed this action on September 12, 2011, seeking declaratory and injunctive relief against Defendants. Plaintiff claims Defendants violated her procedural due process rights, guaranteed by the Due Process Clause of the Fourteenth Amendment, as well as her rights under the

Housing Act and regulations promulgated by the United States Department of Housing and Urban Development ("HUD"), when the MBHA terminated her Section 8 housing assistance after an informal hearing. Compl. 10-12, ECF No. 1.  Specifically, a hearing officer for the MBHA found that Plaintiff's husband, Stanley Pickett, had been living as an unauthorized occupant in Plaintiff's unit while she was receiving assistance. *Id.* at ¶¶ 31, 41.

In her complaint, Plaintiff first alleges the decisionmaker's partiality tainted the informal hearing, leading to various procedural due process violations, including a denial of Plaintiff's opportunity to present evidence at the hearing and a decision from the decisionmaker lacking a sufficient basis of evidentiary support. *Id.* at ¶¶ 47-48.  Second, Plaintiff asserts that, regardless of the procedural flaws, the decision is not supported by substantial evidence because it is based solely on the hearsay evidence submitted at the hearing. *Id.* at ¶¶ 52-53.  Defendants filed a motion for summary judgment on April 3, 2012. Defs.' Mot. for Summ. J., ECF No. 11.  Plaintiff followed with a response, and soon thereafter, with a motion for summary judgment of her own. ECF Nos. 15 & 21.  These cross-motions are now before the Court.

## SUMMARY JUDGMENT STANDARD

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine dispute for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically

2

stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine dispute as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine dispute has been raised, a Court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand a summary judgment motion. *Id.* at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'n Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

DISCUSSION

I.     *Procedural Due Process*

Defendants first argue that the undisputed evidence shows Plaintiff's procedural due process rights, as articulated in *Goldberg v. Kelly*, 397 U.S. 254 (1970), were not violated and that the

hearing was conducted in compliance with federal law. Defs.' Memo. in Supp. of Defs.' Mot. for Summ. J. 4-7, ECF No. 11-1. In response, Plaintiff contends that Defendants' motion should be denied because Defendants failed to make a prima facie showing that they are entitled to summary judgment. Specifically, she points out what she argues is an undisputed fact: that the decisionmaker "failed to articulate the reasons relied upon in the written decision." Pl.'s Memo. in Opp'n to Defs.' Mot. for Summ. J. 7, ECF No. 15. Moreover, Plaintiff maintains that a genuine dispute of material fact exists as to whether the decisionmaker was impartial and whether Plaintiff had the opportunity to present evidence in her favor. *Id.*

In *Goldberg*, the Supreme Court held that pre-termination hearings, such as the informal hearing at issue here, require specific elements to comply with the Due Process Clause of the Fourteenth Amendment. 397 U.S. 254; *cf. Caulder v. Durham Hous. Auth.*, 433 F.2d 998, 1004 (4th Cir. 1970) ("*Goldberg* is equally applicable to the hearing to be afforded tenants of public housing before the determination to evict them."). First, a participant must "have timely and adequate notice detailing the reasons for a proposed termination." *Goldberg*, 397 U.S. at 267-68. Second, "an effective opportunity to defend by confronting [and cross-examining] any adverse witnesses and by presenting his own arguments and evidence orally" must be available. *Id.* at 268-70. Third, a participant "must be allowed to retain an attorney if he so desires." *Id.* at 270. Fourth, "the decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing." *Id.* at 271. Finally, "an impartial [decisionmaker] is essential." *Id.* These requirements were ultimately codified in HUD regulations in "almost literal compliance." *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996); *see also* 24 C.F.R. § 982.555.

The parties do not dispute the following facts: (1) that Plaintiff received timely notice of the grounds for the proposed termination and (2) that she was not denied the opportunity to be

represented by counsel at the hearing. Instead, Plaintiff contends that the factual dispute centers on the partiality of the decisionmaker and her conduct at the hearing. Pl.'s Memo. in Opp'n 9-12. Despite Plaintiff's argument, however, what was said and done at the informal hearing is not disputed. Indeed, Defendants have submitted a sworn transcript of the hearing as an exhibit to their brief, and Plaintiff does not dispute the accuracy of the transcript. *Cf. Williams v. Hous. Auth. of Raleigh*, 595 F. Supp. 2d 627, 629 (E.D.N.C. 2008) (indicating that a bench trial was held "to determine (among other things) what happened at and following the . . . informal hearing"). The only facts that can be genuinely disputed regarding the partiality of the decisionmaker are her subjective thoughts, which this Court may only reasonably infer; however, Plaintiff submits no affidavits and provides no evidence to support a reasonable inference to sufficiently rebut the *presumption* that the decisionmaker was impartial.

The decisionmaker in an administrative proceeding is entitled to a "presumption of honesty and integrity." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). However, where "the adjudicator has a pecuniary interest in the outcome" and where "he has been the target of personal abuse or criticism from the party before him" are situations where "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* The Fourth Circuit, moreover, has held "actual bias or a high probability of bias must be present before due process concerns are raised." *Marshall v. Cuomo*, 192 F.3d 473, 484 (4th Cir. 1999); *see also Bowens v. N.C. Dep't of Human Res.*, 710 F.2d 1015, 1020 (4th Cir. 1983) ("An individual is not disqualified, however, because he has formed opinions about a case based on his or her participation in it. To be disqualifying, personal bias must stem from a source other than knowledge a decision maker acquires from participating in a case." (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966))).

Plaintiff attempts to create a genuine dispute of material fact by pointing to statements made by the decisionmaker at the informal hearing. The decisionmaker found Plaintiff had submitted an "illegal lease" as evidence at the hearing and questioned Plaintiff about her termination from the Section 8 housing assistance program years earlier. Hr'g Tr. 11-12, 14-16, ECF No. 11-3. Plaintiff contends that the decisionmaker "assumed" that Plaintiff was in violation when the decisionmaker asked her why she violated the program's rules. Pl.'s Memo. in Opp'n 10. Specifically, the decisionmaker asked Plaintiff why, after she was informed of the program's rules, she "still didn't follow the program" and violated the rules again. Hr'g Tr. 15. Furthermore, Plaintiff contends the decisionmaker "assumed" Plaintiff intended to defraud the federal government and showed bias when the decisionmaker "went so far as to inform Plaintiff that she 'could actually have [her] arrested for bringing fraud.' "[1] Pl.'s Memo. in Opp'n 10.

Despite Plaintiff's argument, the Court finds the evidence she points to does not adequately show "bias stemming from sources outside the decisional process." *Morris v. City of Danville, Va.*, 744 F.2d 1041, 1045 (4th Cir. 1984). The evidence submitted by the parties and the reasonable inferences drawn in Plaintiff's favor from that evidence show no high probability of bias, at least to the extent in which the presumption this Court must give the decisionmaker is overcome. Indeed, no evidence reasonably suggests the decisionmaker had a pecuniary interest in the outcome of the hearing or had been the target of Plaintiff's personal abuse or criticism. Moreover, no evidence shows the decisionmaker had any bias stemming from a source other than the evidence presented at the hearing. At most, the evidence highlighted by Plaintiff shows a lack of credibility assigned to Plaintiff by the decisionmaker, prompted by the evidence submitted by Plaintiff, as well as

---

[1] Plaintiff also contends that the decisionmaker's alleged refusal to consider statements offered by Plaintiff at the hearing create an inference of partiality. A refusal to consider evidence, however, is more relevant to *Goldberg*'s second prong allowing the presentation of evidence, which the Court will later address.

6

Plaintiff's testimony and conduct at the hearing. Thus, the Court finds that there is no genuine dispute of material fact, as far as *Goldberg* and the Constitution are concerned, that the decisionmaker was not impartial.

The next genuine dispute of fact the Plaintiff argues exists is the fact that Plaintiff was denied the opportunity to present evidence in her defense. Specifically, Plaintiff contends that the decisionmaker "refused to consider Plaintiff's provided statements on the basis that they were not notarized." Pl.'s Memo. in Opp'n 12. After reviewing the transcript of the hearing, however, the Court disagrees. Indeed, no reasonable inference can be drawn that Plaintiff was actually denied the opportunity to present the statements that she failed to get notarized. In fact, the transcript unambiguously shows the decisionmaker accepted the statements. Rather than show an outright refusal to consider, the decisionmaker's comments highlighted by Plaintiff concerned the *credibility* of the statements she presented. The decisionmaker noted that "[t]he notary is for me" and that "[i]t [was] not a requirement" for the consideration of the evidence. Hr'g Tr. 21. Later in the hearing, the decisionmaker repeated herself, clarifying for the record that she "was making a statement that [the statements] don't mean anything to [her] because they're not notarized" and noting that "[t]hey're just a handwritten letter." *Id.* at 22-23. Again, the decisionmaker simply addressed the credibility and weight assigned to the evidence being presented.

Given the nonexistence of a genuine dispute of material fact, the Court turns to Defendants' argument that Plaintiff's due process rights were not violated. Considering the undisputed and material evidence in light of *Goldberg*, the Court agrees. As already noted by the Court, the parties are in agreement that Plaintiff was properly notified of the proposed termination and that Plaintiff was not denied the opportunity to have legal counsel at the hearing. Moreover, the Court has found no evidence or no reasonable inference to adequately dispute and overcome the presumption that

the decisionmaker was impartial or to genuinely dispute the evidence presented by Defendants that Plaintiff was given the opportunity to present evidence in her defense at the informal hearing.  That said, however, Plaintiff responds that Defendants have failed to make a prima facie showing that the written decision complied with *Goldberg*. Pl.'s Memo. in Opp'n 7-9

As noted above, "the decisionmaker's conclusion . . . must rest solely on the legal rules and evidence adduced at the hearing." *Goldberg*, 397 U.S. at 271.  The Supreme Court reasoned that the decisionmaker "should state the reasons for his determination and indicate the evidence he relied on, though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law." *Id.*  Similarly, HUD regulations require that "[t]he person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision." 24 C.F.R. § 982.555(e)(6).

Here, the entire decision, in the form of a letter sent to Plaintiff, was as follows:

> This letter is in response to the informal hearing of June 23, 2009 at 10:00 A.M. at the Myrtle Beach Housing Authority with MBHA representative Ashley Dobis and myself, Katheren Skinner, as Hearing Officer.
>
> Based on the information presented at the hearing, there is a preponderance of evidence that Stanley Pickett has been an unauthorized occupant in your household.  Therefore, the termination is being upheld.  Please reference CFR 982.551 Obligations of participant, which was enclosed in your original termination letter.

Ltr. from Katheren Skinner, Hr'g Officer, MBHA, to Jessisca Beam Pickett (June 24, 2009), ECF No. 15-1.

While the decisionmaker's letter was undeniably bare-boned, the Court finds she complied both with the requirements of due process and with HUD regulations.  The decision was written and included a brief reason for the termination: "that Stanley Pickett ha[d] been an unauthorized occupant in [Plaintiff's] household."  Moreover, the letter indicated that the decision was based on a

8

preponderance of the evidence presented at the informal hearing.  The decisionmaker need not say more, given she is required to base her decision "on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555(e)(6).  Indeed, under *Goldberg*, "[t]he legal and factual basis for such a decision may be adequately supplied by giving notice of the specific grounds for proposed or completed adverse action in advance of a hearing specifically devoted to their consideration." *Boston v. Webb*, 783 F.2d 1163, 1167 (4th Cir. 1986) (citing *Satterfield v. Edenton-Chowan Bd. of Educ.*, 530 F.2d 567, 576 (4th Cir. 1975).  The decisionmaker's failure to state formal findings of fact thus does not render her decision insufficient.  In sum, Plaintiff's procedural rights were not violated.

## II.    *Substantial Evidence*

Next, Defendants argue that substantial evidence supports the decision of the MBHA to terminate Plaintiff's housing voucher and that, accordingly, their motion must be granted. Defs.' Memo. in Supp. 7-8.  Plaintiff, on the other hand, argues her motion should be granted because the decision is not supported by substantial evidence.   Specifically, Plaintiff contends that the decisionmaker relied solely on hearsay evidence in violation of the MBHA's administrative plan approved by HUD. Pl.'s Memo. in Supp. of Pl.'s Mot. for Summ. J. 11-14, ECF No. 21-1.  Plaintiff also argues Defendants' motion must be denied because Defendants failed to show they are entitled to summary judgment based on the arguably undisputed evidence that the decisionmaker "relied exclusively on hearsay evidence to reach her conclusions." Pl.'s Memo. in Opp'n 7.

Having found that the informal hearing complied with the requirements of *Goldberg*, "deference must be shown to the factfinding of" the decisionmaker. *Clark v. Alexander*, 85 F.3d 146, 151 (4th Cir. 1996).  The Fourth Circuit has held the deference "is not absolute but it is significant." *Id.*  There, the court applied a substantial evidence standard to review the factual

findings of the housing agency's decisionmaker. *Id.* ("[T]o insure compliance with federal law, the reviewing court must be satisfied that the hearing officer's conclusions are supported by substantial evidence." (citing 5 U.S.C. § 706(2)(E))); *see also* 24 C.F.R. § 982.555(e)(6) (requiring that factual findings in Section 8 housing voucher termination hearings must be "based on a preponderance of the evidence presented at the hearing"). Accordingly, this Court must review the evidence submitted at the informal hearing to determine whether the decisionmaker's decision is supported by substantial evidence.

Plaintiff argues that the decisionmaker relied exclusively on hearsay, a violation of the MBHA's administrative plan, which provides that "[e]ven though evidence, including hearsay, is generally admissible, hearsay evidence alone cannot be used as the sole basis for the hearing officer's decision." MBHA Admin. Plan. 16-20, ECF No. 1. Even assuming Defendants were bound by the administrative plan and were prohibited from relying *solely* on hearsay evidence,[2] the Court finds substantial evidence supports the decision to terminate Plaintiff's Section 8 housing assistance. Critical to the Court's analysis is that non-hearsay evidence that corroborated the hearsay evidence was presented in the form of Plaintiff's own testimony.

Hearsay evidence is generally admissible in informal administrative proceedings. *See Richardson v. Perales*, 402 U.S. 389, 407-08 (1971); *Clark v. Alexander*, 894 F. Supp. 261, 265 (1995) (holding that the provision of the Social Security Act at issue in *Perales* was "virtually indistinguishable" from the HUD regulation regarding evidence); 24 C.F.R. 982.555(e)(5)

---

[2] Plaintiff contends the MBHA must comply with—and this Court must enforce—the administrative plan's requirement that the decisionmaker cannot base her decision solely on hearsay evidence. However, because the Court ultimately agrees with Defendants that no genuine dispute of material fact exists as to what kind of evidence the decisionmaker based her decision on (here, the decisionmaker undisputedly relied on both hearsay and non-hearsay evidence), it need not conduct any further analysis in order to determine the controlling nature of the administrative plan's ostensibly more-stringent evidentiary requirements.

("Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings."). However, "[m]ere uncorroborated hearsay or rumor does not constitute substantial evidence." *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 230 (1938). In fact, the Supreme Court has drawn a line between "reliable" and "probative" hearsay evidence, which is acceptable, and "material without a basis in evidence having rational probative force." *Perales*, 402 U.S. at 407-08 (internal quotation marks omitted); *see also Williams v. Hous. Auth. of Raleigh*, 595 F. Supp. 2d 627, 633 (E.D.N.C. 2008) (rejecting the argument that *Goldberg* and HUD regulations prohibit a "housing authority's prima facie case [to be based] solely on hearsay").

Before delving into the evidence submitted at the hearing, the Court recognizes that "the ultimate burden of proof on the substantive decision to terminate [Plaintiff's] Section 8 housing benefits" falls on the MBHA. *Williams*, 595 F. Supp. 2d at 633. However, the Court also reiterates that it must give substantial deference to the decisionmaker's finding. *Clark*, 85 F.3d at 151. Substantial evidence is famously defined in *Consolidated Edison* as being "more than a mere scintilla" and meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 305 U.S. at 229. Here, the MBHA was required to prove that Plaintiff's husband, Stanley, was an unauthorized occupant while Plaintiff was receiving assistance from the MBHA.[3]

---

[3] The MBHA requires that a family "request MBHA approval to add any other family member as an occupant of the unit." MBHA Admin. Plan. 12-22; *see also* 24 C.F.R. § 982.551(h)(2). The administrative plan authorizes termination of assistance if the family fails "to comply with any family obligations and related MBHA policies." MBHA Admin. Plan. 12-6; *see also* 24 C.F.R. § 982.552(c). While temporary guests are permitted under the regulations and administrative plan, "[a] guest can remain in the assisted unit no longer than 14 consecutive days or a total of 45 cumulative calendar days during any 12-month period." MBHA Admin. Plan. 3-7, ECF No. 24-8; *see also* 24 C.F.R. § 5.100.

Plaintiff argues that Ashley Dobis, an MBHA employee who investigated the violation and appeared as Defendants' only witness, offered nothing but unreliable hearsay evidence to prove Stanley was an unauthorized occupant, having resided with Plaintiff after February 1, 2008, when Plaintiff's Section 8 housing assistance began. Specifically, Plaintiff contends that, during the hearing, Dobis introduced six police reports to prove Plaintiff and Stanley's cohabitation but that five of the reports were issued *before* February 1, 2008. According to Plaintiff, the only relevant report is an October 1, 2008 report; however, the internally inconsistent report lists two different addresses for Stanley: one at Plaintiff's Pinegrove Road address and another, in parentheses, at a Halyard Way address.

In finding that a preponderance of evidence proved that Stanley was an unauthorized occupant of Plaintiff's unit while she was on assistance, the decisionmaker unquestionably relied on hearsay evidence—largely statements made in police reports and out of the presence of the decisionmaker. But Plaintiff's argument oversimplifies the evidence before the decisionmaker, as well as the decisionmaker's role as factfinder. In determining whether Plaintiff and Stanley lived together, statements in four of the five pre-February 2008 police reports indicating that Stanley and Plaintiff shared the same address are still probative of the fact that they continued to share the same address once Plaintiff obtained assistance in February 2008. Additionally, two of the five pre-February 2008 reports indicated that Plaintiff told the reporting officer that she and Stanley had resided with each other or cohabitated for several years as late as November 2006. Thus, these police reports are both reasonably reliable and probative on the issue of whether there was continued cohabitation of Plaintiff and Stanley and need not be ignored by the decisionmaker. *Cf.* Fed. R. Evid. 803(8) (excepting, from the prohibition of hearsay, public records setting out "factual findings from a legally authorized investigation" when "neither the source of information nor other

circumstances indicate a lack of trustworthiness"). The October 1, 2008 report of Stanley's arrest outside Plaintiff's unit is also reliable and especially probative because the arrest occurred *after* Plaintiff began receiving assistance on February 2008. Indeed, as noted above, the reporting officer listed Plaintiff's Pinegrove Road address as one of Stanley's addresses.[4] Furthermore, the reporting officer referred to the Pinegrove Road address as Stanley's residence multiple times in the report.

This hearsay evidence highlighted by Plaintiff, however, was not the sole evidence to support the decision to terminate Plaintiff's housing assistance. According to Dobis, testifying on behalf of the MBHA at the hearing, Stanley's address in a 2003 police report was the same as Plaintiff's, who had been receiving MBHA housing assistance at the time. Dobis stated that Stanley "would have been [an] unauthorized occupant" in 2003. Hr'g Tr. 7. Also at the hearing, Dobis noted after her investigation she could find no "*permanent* living quarters" for Stanley "besides everywhere [Plaintiff] has resided." *Id.* (emphasis added). Most importantly, however, Plaintiff herself corroborated the police reports when she indicated to the decisionmaker that she and Stanley had a history of living together. *Id.* at 11. Plaintiff's non-hearsay statement to the decisionmaker is probative of their cohabitation. It was entirely proper for the decisionmaker, as the factfinder, to rely on Plaintiff's admission to corroborate the reliable and probative hearsay evidence presented by Dobis at the hearing. Moreover, it was entirely proper for the decisionmaker to discount Plaintiff's credibility, as well as the credibility of the evidence she submitted in her defense. As noted above, Plaintiff submitted a number of statements that were not notarized, as well as a lease (the validity of which was questionable, based on the decisionmaker's knowledge of the property) apparently

---

[4] Plaintiff emphasizes an internal inconsistency in the 2008 police report, which, in addition to the Pinegrove Road address, also listed a Halyard Way address for Stanley. The Court recognizes the inconsistency; however, the factfinder is entitled to weigh all hearsay evidence according to its reliability and probative value. *Cf. Perales*, 402 U.S. at 408; *Robinson v. D.C. Hous. Auth.*, 660 F. Supp. 2d 6, 12 (D.D.C. 2009) ("[A]gencies are entrusted to weigh hearsay evidence according to its truthfulness, reasonableness, and credibility." (internal quotation marks omitted)).

signed by Stanley. Finally, the decisionmaker could draw reasonable negative inferences from her assessment of Plaintiff's credibility. *See Williams*, 595 F. Supp. 2d at 631-32 (citing *Wright v. West*, 505 U.S. 277, 296 (1992)).

Given this evidence before the decisionmaker at the informal hearing, including the reliable and probative hearsay evidence, the Court finds the decision to terminate Plaintiff's Section 8 housing assistance is supported by substantial evidence. The decisionmaker was entitled to rely on the police reports, as well as Plaintiff's and Dobis's statements at the hearing—all of which certainly constituted, in this Court's opinion, "more than a mere scintilla" of evidence. *Consol. Edison*, 305 U.S. at 229. And, in light of this Court's finding that Plaintiff received adequate due process, it may not allow the "opportunity to relitigate the issues previously settled" by the substantive decision. *Clark*, 85 F.3d at 151. In the end, the only fact genuinely and generally disputed by Plaintiff is whether Stanley resided at her home. In the opinion of the administrative factfinder, the MBHA proved he did by a preponderance of the evidence. In the context of these cross-motions for summary judgment, this Court is bound to give substantial deference to that decision. Defendants have met their burden, and they are entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, **IT IS THERFORE ORDERED** that Plaintiff's motion for summary judgment is **DENIED** and that Defendants' motion for summary judgment is **GRANTED**.

14

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

January 24, 2013
Florence, South Carolina